IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

STEVE LYNN GRIFFIN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL ACTION NO.: 2:14-cv-125

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge John R. Mason ("the ALJ" or "ALJ Mason") denying his claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits or, in the alternative, to remand this case for a fair hearing. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, the decision of the Commissioner should be **AFFIRMED**.

BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 30, 2009, alleging that he became disabled on July 9, 2008. (Doc. 11-5, p. 2.) Plaintiff later amended his date of onset from July 9, 2008, to March 3, 2008. (Id. at p. 28.) After his claims were denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On May 27, 2011, ALJ Mason conducted a video hearing at which Plaintiff appeared and testified in Brunswick, Georgia, while the ALJ presided over the hearing in Savannah, Georgia. ALJ Mason found that Plaintiff was not disabled within the meaning of the

Social Security Act at any time through March 31, 2008, Plaintiff's date last insured. (Doc. 11-3, p. 18.) However, ALJ Mason issued a partially favorable decision, finding Plaintiff became disabled on July 15, 2008. (Id.) Plaintiff then amended his date of onset again to March 31, 2008 and requested review of the ALJ's decision. (Doc. 11-4, p. 67.) The Appeals Council granted Plaintiff's request for review, vacated the hearing decision, and remanded the case for further proceedings.[1] (Doc. 11-3, pp. 25–26.) In the second decision, ALJ Mason found Plaintiff became disabled on March 10, 2010. (Doc. 11-2, p. 17.) The Appeals Council denied Plaintiff's request for review of the ALJ's second decision, and this decision became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born on November 11, 1954, was fifty-eight (58) years old when ALJ Mason issued his final decision. (Doc. 11-5, p. 2.) He has an eighth grade education. (Doc. 11-2, p. 39.) Plaintiff's past relevant work experience includes employment as a supply clerk in the National Guard and employment as a construction worker. (Id. at pp. 36, 53.)

## DISCUSSION

### I.     The ALJ's Findings

Pursuant to the Social Security Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or

---

[1] The Appeals Council directed the ALJ to provide a rationale for finding Plaintiff became disabled on July 15, 2008, to reconsider Plaintiff's maximum residual functional capacity, and to obtain evidence from a vocational expert to clarify the effect of Plaintiff's assessed limitations on his occupational abilities. (Doc. 11-3, p. 26.)

combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the claimant is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment. . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

At the first hearing, the ALJ followed this sequential process to determine Plaintiff's date of onset was July 15, 2008. (Doc. 11-3, p. 11.) At Step One, ALJ Mason found Plaintiff engaged in substantial gainful activity until mid-July 2008.[2] (Id. at p. 13.) At Step Two, the

---

[2] ALJ Mason's substantial gainful activity finding was based upon Plaintiff's testimony during the first hearing that he worked full time as a construction worker until mid-July 2008. (Doc. 11-2, p. 53.)

ALJ determined Plaintiff suffered impaired vision, chronic obstructive pulmonary disease, impaired grip of the left hand, degenerative disc disease, peripheral vascular disease, alcohol abuse in remission by testimony, and Borderline Intellectual Functioning. (Id.)  At Step Three, the ALJ determined Plaintiff's impairments did not meet or medically equal a listed impairment. (Id. at p. 14.)  At Step Four, ALJ Mason concluded Plaintiff had the residual functional capacity to perform medium work until July 15, 2008.  (Id. at pp. 14–15.)  In making this determination, ALJ Mason found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms before July 15, 2008, not credible.  He noted the lack of evidence in the record that Plaintiff suffered severely disabling symptoms prior to July 15, 2008, as well as Plaintiff's inconsistent statements regarding his level of literacy.  (Id. at p. 15.)  However, ALJ Mason found Plaintiff's allegations regarding his symptoms and limitations generally credible after July 15, 2008, because Plaintiff testified he stopped working on this date.  The ALJ accordingly concluded Plaintiff had the residual functional capacity to perform only a limited range of sedentary work after July 15, 2008.  (Id. at p. 16.)  At the final step, the ALJ determined Plaintiff was unable to make adjustments to other work in the national economy, considering his age, education, and work experience.  (Id. at pp. 17–18.)  As a result of this analysis, ALJ Mason concluded Plaintiff's date of onset was July 15, 2008.  (Id. at p. 18.)

After examining Plaintiff's case again on remand, ALJ Mason concluded Plaintiff's date of onset was March 10, 2010.  At Step One, ALJ Mason found Plaintiff had not engaged in substantial gainful activity since March 31, 2008, his amended alleged date of onset.[3]  (Doc. 11-2, p. 19.)  At Steps Two and Three, ALJ Mason again found Plaintiff had a combination of severe impairments, but these impairments did not meet or medically equal the severity of a

---

[3] As noted below, ALJ Mason found Plaintiff's assertion that he was unable to work after March 31, 2008, not credible due to Plaintiff's history of tax evasion and inconsistent testimony regarding his dates of unemployment. (Doc. 11-2, p. 19.)

4

listed impairment. (Id. at pp. 19–21.) At Step Four, ALJ Mason considered whether Plaintiff had the residual functional capacity to perform past relevant work. The ALJ found Plaintiff's statements regarding his disabling symptoms not credible prior to March 10, 2010, citing Plaintiff's inconsistent statements and history of tax evasion. (Id. at p. 22.) As a result, ALJ Mason found Plaintiff was capable of performing medium work until March 10, 2010. (Id. at p. 21.) At Step Five, ALJ Mason determined that, after March 10, 2010, Plaintiff was capable of performing sedentary work, but no jobs existed in significant numbers in the national economy considering the claimant's age, education, work experience, and residual functional capacity. (Id. at pp. 23–24.) Therefore, ALJ Mason found Plaintiff became disabled on March 10, 2010. (Id. at p. 25.)

## II.    Issues Presented

Plaintiff contends the ALJ abused his discretion by finding Plaintiff's disability had two separate dates of onset—July 15, 2008, in the first decision and March 10, 2010, in the second decision. Plaintiff further contends the ALJ failed to analyze his credibility in a proper manner.

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the Court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV.     Disability Onset Date

Plaintiff argues the ALJ abused his discretion by failing to explain why he found Plaintiff's disability date of onset was July 15, 2008, in the first decision, but changed his finding to March 10, 2010 in the second decision. (Doc. 1, p. 1.) The Commissioner responds that the ALJ adequately explained the basis of his decision and that substantial evidence supports the ALJ's decision. (Doc. 14, p. 6.)

Social Security Ruling 83-20 defines the date of onset as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983). This Ruling provides that the factors relevant to determining the date of onset for disabilities of non-traumatic origin include the claimant's allegations, his work history, and medical and other evidence related to the severity of the impairment. Id. at *2. The date alleged by the claimant, however, should be used in determining the date of onset of disability only if it is consistent with all the evidence available. Id. at *3.

Upon reexamination of the case in the second hearing, ALJ Mason determined Plaintiff's date of onset of disability was March 10, 2010. (Doc. 11-2, p. 17.) ALJ Mason considered

Plaintiff's medical records and a Function Report in making this determination but discounted Plaintiff's allegations regarding his date of onset and work history. ALJ Mason noted medical records on and after March 10, 2010, indicated Plaintiff suffered from multiple disabling symptoms. Plaintiff's treating physician, Dr. Scott Clay, diagnosed Plaintiff with peripheral vascular disease on March 10, 2010, after Plaintiff complained of significant pain in his legs. (Id. at p. 20.) On March 17, 2010, a lumbar spine x-ray showed plaintiff suffered moderate degenerative disc changes. (Id.) On October 12, 2010, Dr. William C. Everett reported Plaintiff had impaired vision and symptoms consistent with glaucoma. (Id. at p. 19). From January 24, 2012, to May 2, 2012, Dr. Stephen Chitty diagnosed Plaintiff with moderate chronic obstructive pulmonary disease, peripheral arterial disease, hyperlipidemia, hypertension, and hypothyroidism. (Id. at p. 20.)

ALJ Mason also noted that medical records prior to March 10, 2010 indicated Plaintiff's symptoms were less severe. On October 28, 2009, Dr. Adewunmi Sobowale opined Plaintiff could perform a wide array of physically and mentally exerting tasks,[4] despite Plaintiff's diagnoses of shortness of breath, mixed hyperlipidemia, essential hypertension, retinal hemorrhage, cramps in limbs, and nausea. (Id.) On November 12, 2009, Dr. Marc W. Eaton concluded Plaintiff could perform "significantly more activities than he reported," despite functioning at an extremely low intellectual level. (Id. at p. 21.) On December 3, 2009, Dr. Harold Sours concluded Plaintiff could lift or carry up to fifty pounds, stand, walk, or sit for six hours per eight hour work day, and push or pull without limitation. (Id. at p. 23.) Carolyn A. Taylor, a friend and caretaker of Plaintiff, also testified that, as of October 22, 2009, Plaintiff

---

[4] Dr. Sobowale opined that Plaintiff could stand, walk, lift, and carry weights, as well as sit for extended periods, reach, handle, finger and feel, climb, balance, stoop, and bend. Dr. Sobowale also observed that Plaintiff could hear and speak well, had no difficulty remembering and following instructions, and could maintain his concentration and attention to tasks. (Doc. 11-7, p. 51.)

7

cooked his own meals, mowed the grass using a riding mower, and fed and played with his dog. (Id. at pp. 22–23.)

ALJ Mason applied the appropriate legal standard by considering reports from Plaintiff's treating physicians, reports from state agency medical and psychological consultants, and the Function Report from Plaintiff's friend and caretaker. ALJ Mason also properly discounted Plaintiff's testimony that he became disabled prior to March 10, 2010, because this testimony was not consistent with his medical records. Furthermore, substantial evidence supports ALJ Mason's conclusion. Plaintiff's medical records did not indicate he suffered disabling symptoms prior to March 10, 2010, while the records track a sharp decline in Plaintiff's health after March 10, 2010. Moreover, Plaintiff's friend and three physicians purported that Plaintiff was capable of performing a significant number of physical and mental tasks before March 10, 2010. Because ALJ Mason applied the appropriate legal standard and substantial evidence supports his conclusion, Plaintiff's contention that the ALJ's second decision was an abuse of discretion is without merit.

**V.     Credibility Determination**

Plaintiff advances two sets of arguments to support his contention that ALJ Mason's credibility finding was an abuse of discretion. First, Plaintiff argues that ALJ Mason failed to articulate any reason for discrediting Plaintiff's assertion that his date of onset was March 31, 2008. (Doc. 13, p. 1.) Next Plaintiff argues that ALJ Mason abused his discretion by improperly considering Plaintiff's history of tax evasion as a factor in his credibility determination. Defendant responds that the ALJ adequately explained the basis of his decision and that substantial evidence supports the ALJ's credibility finding. (Doc. 14, p. 6.) Defendant denies that ALJ Mason abused his discretion by taking Plaintiff's tax evasion into consideration.

"If a plaintiff testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

Review of ALJ Mason's decision reveals that he considered Plaintiff's medical condition as a whole and clearly articulated the reasons behind his credibility determination. First, as laid out above, ALJ Mason cited numerous medical records supporting his conclusion that Plaintiff's date of onset was not March 31, 2008, as he claimed. For example, on October 28, 2009, Dr. Adewunmi Sobowale reported Plaintiff could stand, walk, lift, carry weights without any difficulty, reach, handle, finger and feel, climb, balance, stoop, and bend. (Doc. 11-2, p. 20.) After a psychological examination on November 12, 2009, Dr. Marc W. Eaton, Ph.D., opined that Plaintiff was "capable of performing significantly more [daily activities] than he reported. (Id. at p. 21.) ALJ Mason noted that State Agency medical consultants found Plaintiff could lift or carry up to fifty pounds, stand or walk for up to six hours in an eight hour work day, and push or pull objects without restriction. (Id. at p. 21.) ALJ Mason also considered the Function Report from October 22, 2009, from Plaintiff's friend and caretaker, reporting that Plaintiff prepared his own meals, mowed his grass with a riding mower, and fed and played with his dog. (Id. at pp. 22–23.)

ALJ Mason determined Plaintiff's inconsistent statements regarding when he last worked further discredited his testimony. (Id. at p. 22.) At the first hearing, Plaintiff testified that he stopped working on July 15, 2008. (Id. at p. 53.) In his appeal of the ALJ's first decision, Plaintiff claimed that he actually stopped working in 2006 and had simply misspoken at the hearing. (Doc. 11-4, p. 67.) At the second hearing, Plaintiff initially testified that he stopped working in 2006. However, shortly thereafter Plaintiff again testified that he worked until 2008, only to correct himself at counsel's direction. (Doc. 11-2, pp. 62–63.) Furthermore, the record indicated Plaintiff previously told consultative psychological examiner Marc Eaton, Ph.D,. he was laid off due to a lack of work in December 2008. (Doc. 11-7, p. 53.) In February 2010, Plaintiff reported to Dr. Scott Clay he had been unable to work for a year. (Id. at p. 90.) Though Plaintiff's former boss, Mike Newsome, testified that he terminated Plaintiff in 2006, he did not know whether Plaintiff resumed working elsewhere afterwards. (Doc. 11-2, pp. 66, 69.)

ALJ Mason clearly articulated these reasons in his decision. Furthermore, ALJ Mason's evaluation of Plaintiff's medical records, the Function Report, and Plaintiff's own testimony indicates the ALJ considered Plaintiff's medical condition as a whole. In addition, ALJ Mason's credibility determination is supported by substantial evidence. Plaintiff's medical records contradicted his testimony that he became disabled March 31, 2008, and Plaintiff gave inconsistent testimony regarding his work history. For these reasons, Plaintiff's first argument lacks merit.

Plaintiff also argues ALJ Mason abused his discretion by considering Plaintiff's history of tax evasion as a factor in his credibility finding. (Doc. 13, pp. 3–4.) According to Plaintiff, ALJ Mason's references to Plaintiff's past tax evasion were improper and irrelevant because they

merely attacked Plaintiff's character.[5] (Id. at p. 3.) Plaintiff argues in the alternative that ALJ Mason's determination was improper because Plaintiff's failure to pay taxes was caused by an intellectual disability and, therefore, did not shed light on the trustworthiness of his testimony. (Id.) Defendant denies that ALJ Mason abused his discretion by considering Plaintiff's history of tax evasion in his credibility determination.

Credibility determinations are the province of the ALJ, and the Court will not disturb a clearly articulated credibility finding absent substantial evidence. Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014). ALJ Mason clearly articulated his finding that Plaintiff's history of tax evasion undermined his testimony regarding his prior dates of employment and his date of onset.[6] (Doc. 11-2, p. 19.) Plaintiff presented no substantial evidence to refute ALJ Mason's credibility finding. Though Plaintiff submitted an affidavit from a previous employer stating that he stopped working in 2006, this affidavit was of limited value because the employer did not know whether Plaintiff continued working elsewhere thereafter. (Id. at p. 69.) Because ALJ Mason clearly articulated the reason behind his credibility finding and Plaintiff presented no substantial evidence to refute this finding, this enumeration of error is without merit.

---

[5] In Plaintiff's view, tax evasion speaks to his general character, a variable that does not change over time. Plaintiff argues that it was, therefore, irrational for ALJ Mason to conclude Plaintiff was not credible before March 10, 2010, but became credible after March 10, 2010, based on his history of tax evasion. According to Plaintiff, ALJ Mason only referenced these incidents to "besmirch" Plaintiff's character and therefore abused his discretion. (Doc. 13, pp. 3–4.)

[6] Though ALJ Mason did not elaborate on the connection between Plaintiff's history of tax evasion and the credibility of his testimony, his reasoning is apparent. Plaintiff's failure to report his earnings and pay taxes in 2004 and 2005 casted doubt on whether Plaintiff reported his earnings and paid taxes in subsequent years. Therefore, whether Plaintiff truly stopped working before his alleged date of onset was uncertain. Thus, regardless of whether Plaintiff's tax evasion sheds light on Plaintiff's character for truthfulness generally, it casts doubt on the credibility of his account of his earnings and employment history.

11

# CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**. It is also my **RECOMMENDATION** that this case be **CLOSED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 2nd day of October, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA